IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRIAR CAPITAL L.P., § <br> Plaintiff, § <br> § <br> v. § <br> § <br> THE HANOVER INSURANCE COMPANY § <br> Defendant. § | C.A. NO. 4:17-cv-01532 |

## FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

**COMES NOW BRIAR CAPITAL L.P.** ("Briar Capital"), and submits its First Amended Original Complaint against **THE HANOVER INSURANCE COMPANY** ("Hanover"), and respectfully shows as follows:

## PARTIES AND JURISDICTION

1. Briar Capital is a Texas limited partnership which conducts business in Harris County, Texas and within the jurisdiction of this Honorable Court.

2. Hanover is a New Hampshire corporation licensed to conduct business in Texas. Hanover has appeared and answered herein.

3. Briar Capital and Hanover have each alleged that this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTUAL BACKGROUND

*Forward's Defrauding of Briar Capital*

4. Briar Capital is a specialty finance company which provides asset based lending and a factoring facility for small and mid-market companies.

5. Factoring is a financing transaction, sometimes referred to as accounts receivable financing, in which a business sells its invoices, or receivables, to a third party financial company

1



known as a "factor." The factor then collects on those invoices, typically directly from the business' customers.

6. Forward Components, Inc. ("Forward") is a distribution and stocking facility which provides component engineering and traceable material support to aerospace and defense industries.

7. On May 8, 2012, Briar Capital and Forward entered into a Sale of Accounts and Security Agreement ("the Agreement").

8. Under the Agreement, Briar Capital agreed to purchase various "accounts and related interests" from Forward for the Net Invoice Amount less Briar Capital's factoring commission.

9. Briar Capital and Forward developed a course of dealings regarding the factoring transactions under the Agreement.

10. When Briar Capital factored Forward's accounts receivable ("Accounts") from Forward, each Account was an integrated document consisting of:

  (a) a "Schedule of Accounts Sold/Bill of Sale" (the "Schedule") which included the schedule date, schedule number, name of account debtor, invoice number(s), invoice date and amount of each invoice sold, and signature of authorized signer of Forward.

  (b) Forward's invoice to its customer (the "Account Debtor") for the commodities, technology or software which Forward sold to the Account Debtor. Each invoice included the purchase order number, a description of the product(s) sold, the quantity, the amount charged, and shipment tracking information. The tracking information allowed Briar Capital to confirm that Forward's product had been received by the Account Debtor.

  (c) the Account Debtor's purchase order, which identified Forward as the supplier, the Account Debtor's contact information, the product(s) being purchased, the price of the product(s), and the shipping address.

2

11. Briar Capital provided factoring to Forward between 2012-2016. The vast majority of the purchase orders and invoices in the Schedules were transactions between Forward and its principal customers, Honeywell International, Inc. and numerous subsidiaries ("Honeywell"). During that four year period, Forward sold Briar Capital numerous Honeywell Accounts. Payments for the Accounts were typically late. Forward President Scott Wilkosz ("Wilkosz") continually, and, as was later discovered, falsely represented that many of the Honeywell subsidiaries would not pay Briar Capital directly and would only pay Forward. Wilkosz repeatedly blamed the late payments on Honeywell's business practices and payment terms.

12. During March through August, 2016, Forward's payments to Briar Capital for the Honeywell Accounts slowed down considerably. Briar Capital repeatedly pressed Forward President Wilkosz for collections and answers as to why the Honeywell payments had slowed considerably. Wilkosz made excuses and offered promises, but without effect.

13. In early August 2016, Briar Capital engaged a field examiner to inspect the books and records of Forward. The field exam report came back with no exceptions. However, no progress was made regarding the Honeywell payments in September and October.

14. Accordingly, in late October, 2016, Briar Capital launched an investigation into the reasons for the Honeywell late payments.

15. On or about November 2, 2016, Briar Capital discovered that 15 Honeywell Accounts (including 15 Schedules, 22 purchase orders and invoices) which it purchased from Forward were fraudulent. In a conference call with Briar Capital representatives and a Forward business consultant, Wilkosz openly confessed that he had committed fraud when Forward sold the Accounts to Briar Capital.

16. Wilkosz altered each of the 22 purchase orders in the Accounts by taking genuine Honeywell electronic PDF purchase orders to Forward and modifying them in an Adobe Systems International ("Adobe") software program. The altered purchase orders contained substantially larger quantities of products, and, occasionally different unit prices, than those Honeywell had actually ordered. And of course, the altered purchase orders reflected substantially higher "Net Values Excluding TAX" than the genuine purchase orders.

17. Wilkosz also altered the invoices Forward sent to Honeywell for the genuine Honeywell purchase orders. Wilkosz took the 22 invoices Forward actually sent to Honeywell for the genuine purchase orders and altered the invoice number, quantity, (occasionally) unit price and amount to match the altered Honeywell purchase orders.

18. Finally, Wilkosz filled in the relevant sections of the Schedule and forwarded the complete Account including the Schedule, altered purchase order(s), and altered invoice(s) to Briar Capital.

19. Briar Capital then extended credit, or gave value for, each Account and relied in good faith on each component of the Account, including the altered purchase orders and invoices.

20. The fraudulent Accounts which Briar Capital purchased from Forward currently total in excess of Nine Hundred Thousand and No/100 Dollars ($900,000.00) and the losses increase each month they are not paid.

***The Hanover Financial Institution Bond***

21. Briar Capital is the insured under Hanover's Financial Institution Bond form No. 15, bearing BFD 1045523 (the "Bond").

22. The Bond essentially provides coverage up to policy limits of $1,500,000, for several categories of crime and fraud coverage:

4

>Fidelity;
>Loss of Property on Premises;
>Loss of Property In Transit;
>Forgery or Alteration;
>Securities; Counterfeit Currency;
>Forgery of Negotiable Instruments or Withdrawal Orders;
>Voice Initiated Transfer Fraud;
>Telefacsimile Transfer Fraud;
>Computer Systems Fraud;
>ERISA Losses; and
>Audit/Expenses.

23. The Bond contains several Insuring Agreements which apply to the losses Briar Capital sustained as a result of Forward's fraudulent scheme. Based upon the investigation it has conducted to date, Briar Capital presently contends that Sections "D" and "E" apply to the Forward losses. If subsequent investigation uncovers evidence that other Insuring Agreements in the Hanover Bond apply to the Forward losses, Briar Capital reserves the right to assert those Agreements and amend its Complaint to include them in this litigation.

24. Section D of the Bond provides:

>FORGERY OR ALTERATION
>
>(D) Loss resulting directly from Forgery or alteration of, on, or in any Negotiable Instruments (except registered or bearer obligations) made or drawn by or drawn upon the insured, or made or drawn by one acting as agent of the insured, or purporting to have been made as herein before set forth:
>
>A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

25. The Bond defines "Negotiable Instrument" as "any writing (1) signed by the maker or drawer; (2) containing any unconditional promise to pay a sum certain in Money and no other promise, order, obligation, or power given by the Maker or drawer' and, is payable on demand or at a definite time; and (3) is payable to order or bearer."

26. Each Forward Account was a Negotiable Instrument; each was altered and Briar Capital's losses resulted directly from the alterations in the Accounts.

27. Section E of the Bond provides:

### SECURITIES

(E) Loss resulting directly from the insured having, in good faith, for its own account or for the account of others,

    (1) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of, any original:

        (a) Certificated Security,
        (b) Document of Title,
        (c) deed, mortgage or other instrument conveying title to, or creating or discharging a lien upon, real property,
        (d) Certificate of Origin or Title,
        (e) Evidence of Debt,
        (f) corporate, partnership or personal Guarantee, or
        (g) Security Agreement

Which

        (i) bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a Forgery; or
        (ii) is altered, or
        (iii) is lost or stolen;

    (2) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any item listed in (a) through (d) above which is a Counterfeit.

Actual physical possession of the items listed in 9a) through (g) above by the insured, is a condition precedent to the insured's having relied on the faith of such items.

A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

28. The policy defines "Evidence of Debt" as:

6

> "An instrument, including a Negotiable Instrument, executed by a customer of the insured and held by the insured which in the regular course of business is treated as the customer's debt to the insured."

29. Each Account which Briar Capital purchased from Forward was Evidence of Debt as defined by the Bond.

30. Each Account was altered by Forward's Scott Wilkosz.

31. Briar Capital had actual physical possession of each Account it purchased from, or extended credit upon, Forward.

32. Briar Capital sustained losses resulting directly from having, in good faith for its own account either giving value or extending credit on the faith of the original Accounts which it acquired from Forward.

33. All conditions precedent to Briar Capital's recovery under the Bond have been performed.

### *Hanover's Processing of Briar Capital's Claims*

34. Briar Capital notified Hanover in writing of its loss as the result of being defrauded by Forward on November 16, 2016. Within days of receiving Briar Capital's claim, Hanover engaged its coverage counsel who immediately took charge of Hanover's communications with Briar Capital.

35. Pursuant to the Bond and Hanover's instructions, Briar Capital filed a Proof of Loss with Hanover on February 9, 2017. It also provided information responsive to certain discrete Hanover requests about the claim and over ten thousand documents in a flash drive which Hanover requested upon receipt of the Proof of Loss.

36. Thereafter Hanover and Briar Capital representatives had several communications and telephone conferences regarding Briar Capital's claim.

37.     On March 8, 2017, Briar Capital representatives and Hanover representatives participated in a conference call regarding Briar Capital's claims. The participants included Frank Goldberg, Briar Capital's Chairman and CEO; Michael Jay Kuper, Briar Capital's attorney; George Gibson, Briar Capital's attorney; and John Murphy, Briar Capital's insurance broker. Hanover was represented by David Brown, Hanover's coverage attorney, and Ginger Johnson, a Hanover adjuster. During that call, Mr. Brown, who was speaking and acting on Hanover's behalf, stated that they knew when the (Briar Capital) claim came in that it was not covered. Ms. Johnson did not rebuke or disclaim Mr. Brown's statement. Hanover continued to demand documents and responses from Briar Capital after the March 8, 2017 call.

38.     Notwithstanding Hanover's preemptive denial of Briar Capital's claim, Briar Capital has fully complied in Hanover's investigation into the facts and circumstances of the claim. Briar Capital has provided Hanover with (1) a verified Proof of Loss with a complete factual background as requested by Hanover; (2) a flash drive filled with data and facts requested by Hanover; (3) a four page letter with detailed responses to additional specific questions raised by Hanover; and (4) two Dropboxes containing several thousand pages of additional documents also requested by Hanover.

39.     Briar Capital has also tendered five of its employees, who were specifically requested by Hanover, for Examinations Under Oath. Hanover's attorney took those Examinations on July 25-26, 2017.

40.     Hanover's liability to Briar Capital's losses resulting from purchasing the Forward documents has been clear since the dates that it filed the Proof of Loss and produced the flash drive filled with nearly 10,000 documents requested by Hanover. However, as of the date of filing of

8

this First Amended Complaint, Hanover has failed and refused to honor its obligations under the Bond and pay Briar Capital for its losses.

***Briar Capital's Insured Losses***

41. Briar Capital's losses are a direct result of fraudulently altered Accounts, including invoices and Purchase Orders, from Forward.

42. The Forward Accounts which Briar Capital purchased and which remain unpaid are:

| Date of Purchase | Account Debtor(s) | Schedule Number | Total Invoice Amount |
|---|---|---|---|
| March 7, 2016 | Honeywell (NM) | 337 | $61,375.00 |
| March 15, 2016 | Honeywell (MX) | 338 | $61,000.00 |
| March 16, 2016 | Honeywell (Paulin) and Honeywell (NM) | 339 | $108,136.25 |
| March 17, 2016 | Honeywell (Paulin) | 340 | $57,180.00 |
| March 21, 2016 | Honeywell (Paulin) | 341 | $54,080.00 |
| March 22, 2016 | Honeywell (Paulin) | 342 | $48,425.00 |
| April 18, 2016 | Honeywell (NM) | 343 | $48,631.00 |
| April 21, 2016 | Honeywell (AZ) and Honeywell (MX) | 344 | $77,080.00 |
| June 9, 2016 | Honeywell (AZ) and Honeywell (MX) | 345 | $89,609.00 |
| June 10, 2016 | Honeywell (MX) and Honeywell (Torrance) | 346 | $97,940.50 |
| June 10, 2016 | Honeywell (Torrance) | 347 | $28,200.00 |
| June 13, 2016 | Honeywell (Torrance) | 348 | $34,250.00 |
| June 14, 2016 | Honeywell (AZ) | 349 | $48,000.00 |
| June 15, 2016 | Honeywell (MX) | 350 | $47,500.00 |
| July 6, 2016 | Honeywell (AZ) and Honeywell (MX) | 351 | $149,624.00 |

43. As of the filing of this First Amended Original Complaint, Hanover has refused and failed to pay Briar Capital its covered losses under the Bond.

## CAUSES OF ACTION

*First Cause of Action - Breach of Contract*

44. The allegations of Paragraph 1 through 43 are incorporated herewith by reference and reiterated as if fully set forth verbatim.

45. Hanover has breached its obligations under the Bond by failing and refusing to accept and pay Briar Capital's claim, which was both timely made and is covered by the Bond.

46. Briar Capital seek damages caused by these breaches, including, but not limited to, all direct, actionable, incidental, consequential, economic, special, nominal and general damages, with costs of Court, attorney's fees and pre- and post-judgment interest.

*Second Cause of Action – Good Faith and Fair Dealing*

47. The allegations of Paragraphs 1 through 46 are incorporated herewith by reference and reurged as if fully set forth verbatim.

48. The Bond created an obligation on Hanover to process Briar Capital's claim in good faith and fair dealing.

49. Hanover breached that duty of good faith and fair dealing when it preemptively determined that the claim was not covered, even before an investigation and when it failed to approve the payment of Briar Capital's claim when coverage was reasonably clear.

50. Hanover's breach of duty proximately caused damages to Briar Capital. Briar Capital seeks is damages caused by such breaches including all direct, actionable, incidental consequential, economic, special, nominal and general damages, plus costs of Court and attorney's fees and pre- and post-judgment interest.

51. Briar Capital also seeks exemplary or punitive damages based upon Hanover's intentional or grossly negligent conduct in the processing of Briar Capital's claim.

### *Third Cause of Action – Chapter 541, Tex. Ins. Code*

52. The allegations of Paragraphs 1 through 51 are incorporated herewith and reurged as if fully set forth verbatim.

53. Briar Capital invokes the provisions of § 541.001, *et* seq., Tex. Ins. Code ("UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS OR PRACTICES").

54. Subchapter B, § 541.051, Tex. Ins. Code, provides that "it is an unfair act or deceptive act or practice in the business of insurance to…(1) make, issue or circulate, or cause to be circulated an estimate, illustration, circular or statement misrepresenting with respect to a policy issued or to be issued: (A) the terms of the policy; and (B) the benefits or advantage promised by the policy."

55. When Briar Capital submitted its application for insurance to Hanover, Briar Capital included its financial statement which clearly demonstrated that approximately 5% of Briar Capital's revenues came from its factoring operations.

56. Hanover issued the Financial Bond without advising Briar Capital that it did not cover factoring, and Briar Capital paid the premium for the Bond.

57. During the pendency of Briar Capital's claims for the Forward losses, one of its underwriters advised Briar Capital's insurance broker that Hanover would not renew the Bond because Hanover never intended to cover factoring operations.

58. At no time during the application process or of the inception of the Policy did Hanover advise Briar Capital that it never intended to cover factoring losses under the Bond.

59. Hanover's conduct as alleged above violates § 541.051 of the Insurance Code.

60. Subchapter B, § 541.060(a), Tex. Ins. Code provides that "it is…an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured: (2) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of (A) a claim with respect to which insurer's liability has become reasonably during…(4) failing within a reasonable time to (a) affirm or deny coverage of a claim to a policyholder…and (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

61. Hanover's conduct as alleged violates subchapter B, §§ 541.060(a)(2), (4) and (7), Tex. Ins. Code.

62. Section 541.061, Tex. Ins. Code ("MISREPRESENTATION OF INSURANCE POLICY") provides that:

> "It is an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
>
> (4) making a material misstatement of law; or
>
> (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provisions of this code."

63. Hanover's conduct as alleged violates Subchapter B, § 541.061(1) – (5).

64. Pursuant to § 541.151, Tex. Ins. Code, Briar Capital is entitled to bring an action against Hanover for engaging in acts or practices defined by Subchapter B as unfair acts or practices.

65. Pursuant to § 541.152(1), Tex. Ins. Code, Briar Capital is entitled to recover its actual damages, court costs and reasonable and necessary attorney's fees.

66. Briar Capital seeks all damages caused by such breaches, including, but not limited to, all direct, actionable, incidental, consequential, economic, special, nominal and general damages. Briar Capital also seeks its costs of Court, attorney's fees and pre- and post-judgment interest.

67. Hanover's conduct as alleged was knowingly committed. Pursuant to § 541.152(b), Tex. Ins. Code, Briar Capital seeks an amount not to exceed three times the amount of actual damages as additional damages.

*Fourth Cause of Action – Fraudulent Inducement*

68. The allegations of Paragraph 1 through 67 are incorporated herewith by reference and reurged as if fully set forth verbatim.

69. Hanover expressly intended that losses resulting from factoring operations would not be covered under its Financial Institution Bond.

70. Hanover knew from Briar Capital's Application and supporting materials that Briar Capital conducted factoring operations.

71. Hanover failed to disclose to Briar Capital that it would not pay for factoring losses under the Bond.

72. Hanover's failure to disclose its intent not to cover factoring losses was an act of knowing concealment which fraudulently induced Briar Capital to purchase coverage under the Financial Institution Bond.

73. If Hanover had disclosed to Briar Capital that it did not intend that its Financial Institution Bond would cover factoring losses, Briar Capital would not have purchased coverage under the Financial Institution Bond. Coverage for factoring losses under financial institution bonds was available from other insurers.

74. If Hanover asserts that its Financial Institution Bond does not cover Briar Capital's claim, Briar Capital is entitled to recover all losses caused by Hanover's fraudulent inducement.

75. Briar Capital also seeks punitive damages from Hanover for its intended or reckless fraudulent conduct.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Briar Capital seeks to have judgment in its favor against Hanover, for its damages, attorney's fees, costs of Court, pre- and post-judgment interest, exemplary and additional damages, in addition to such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

By  /s/ Charles W. Kelly
**CHARLES W. KELLY**
State Bar No. 11216850
cwkelly@cwklawyer.com

**ATTORNEY FOR PLAINTIFF**
**BRIAR CAPITAL L.P.**

OF COUNSEL:
**CHARLES W. KELLY, P.L.L.C.**
221 N. Kansas, Suite 747
El Paso, Texas 79901
(915) 242-2125 – Telephone
(915) 242-2101 – Facsimile

**MICHAL JAY KUPER**
A Professional Corporation
Michael Jay Kuper
State Bar No. 11765000
2901 Via Fortuna Drive, Suite 500
Austin, Texas 78746
(512) 874-3895 – Telephone
(512) 892-4800 - Facsimile
mkuper@kuperlawfirm.com

## **CERTIFICATE OF SERVICE**

This is to certify that on the 20th day of August, 2017, a true and correct copy of the foregoing has been transmitted via the Court's ECF filing system to the following counsel of record:

Brenda Neel Hight, Esq.
Kaufman Dolowich & Voluck, LLP
3838 Oak Lawn Avenue, Suite 1000 #187
Dallas, Texas 75219
Email: Brenda.hight@brendahightlaw.com
Emai: bhight@kdvlaw.com


David T. Brown, Esq.
Andrew S. Johnson, Esq.
Kaufman Dolowich & Voluck, LLP
135 S. LaSalle Street, Suite 2100
Chicago, Illinois 60603
dbrown@kdvlaw.com
ajohnson@kdvlaw.com


    /s/ Charles W. Kelly
    **CHARLES W. KELLY**

15